### 70971. NEW v. WILKINS.
(343 SE2d 136)

POPE, Judge.

This appeal arises from a child custody dispute. Wilkins, the mother, and New, the father, were divorced in 1976, and the mother

was awarded custody of their minor child. In November 1983 the father petitioned for a change of custody, and on December 9 the parties consented to an order which first ruled that the respondent mother was correct and venue was improper and, second, that the provisions of the original decree, which granted custody to the mother, are "in effect and all parties are ordered to comply with them." Prior to signing the order, at the instigation of the court the parties and other relatives had agreed to the custody arrangements and professional counseling for the child and any other members of the family interested in participating.

In June 1984 the father filed a change of custody petition in the proper venue. Upon motion of the mother, the trial court at the hearing ordered that no evidence could be introduced on the issue of custody prior to December 9, 1983 because the consent order of that date "represents a final order in that case and is res judicata." The trial court granted a certificate of immediate review of this order to the father, "provided that plaintiff file a supersedeas bond in the amount of Two Thousand ($2,000.00) Dollars prior to the docketing of said appeal, said bond to cover any and all costs of litigating the appeal by Defendant." The father filed an application for review of the evidentiary ruling and of the bond requirement, which was denied by the Court of Appeals, and the case came back on for trial in December 1984. Upon the mother's motion, the trial court dismissed the action due to the father's failure to comply with the court's instruction to post bond before filing his application for review. We granted the father's current application to review the dismissal of the action. OCGA § 5-6-35 (a) (2); see *Citizens &c. Nat. Bank v. Rayle*, 246 Ga. 727, 730 (273 SE2d 139) (1980).

1. The father asserts that the trial court erred in dismissing the action for failure to comply with the court's direction, arguing that he did not disobey it. Assuming without deciding that the trial court had authority to require the posting of a bond for interlocutory, discretionary appellate review, see *Turner v. Harper*, 233 Ga. 483 (211 SE2d 742) (1975), we conclude that in any event the court erred in determining that the father violated the order.

The following discussion transpired between the court and father's counsel at the hearing wherein counsel had requested a certificate of immediate review: "COURT: I assume your clients would be willing to indemnify the wife for her expenses and attorney fees up to this point and also for any future action should he not prevail in this certificate for immediate review. COUNSEL: . . . [T]he very purpose behind a certificate of immediate review in some cases is judicial economy and economy of parties. In this particular case what I'm asking the court it would actually save us all some time and effort and money. COURT: If he wins he doesn't lose his money. All I'm asking

him to do is post a bond in case he does lose, then he's cost her on this delay in coming here for nothing today and it costs her to go to the Court of Appeals fight it up there and I don't [think] too much of your motion but I seldom ever deny somebody a motion of immediate review, but I do think if you are going to take advantage of that privilege that she should be indemnified to where it doesn't cost her any money to give you the opportunity to challenge this point. COUNSEL: Well we want to take it up but we don't [want] a bond so onerous that we are not capable of taking that particular point up, I think it's a very, very difficult issue as to whether or not that raises the point of res adjudicata . . . COURT: Take a certificate of review immediate review, posting of a two thousand dollar bond to indemnify the wife costs and attorney fees." There was no discussion at this hearing as to the stage at which the bond would have to be posted.

Obviously the bond did not have to be posted before the certificate was given, because the court gave the certificate without it. The certificate recites: "I hereby certify as Trial Judge that such Order [prohibiting the introduction of evidence as to custody prior to December 9, 1983] is of such importance to the case that immediate review should be had, and that direct appeal in such matter is proper provided that Plaintiff file a supersedeas bond in the amount of two thousand dollars ($2,000.00) prior to the docketing of said appeal, said bond to cover any and all costs of litigating the appeal by Defendant."

The plain language controls. Although the trial court stated upon dismissing the petition for failure to comply with its instructions that it had granted the certificate "on the sole condition that [the father] would post a $2,000.00 bond to indemnify the Defendant in this case," this intention is not set out. The certificate merely directed that a bond be posted "prior to the docketing of said appeal," which did not clearly convey that this meant prior to or at the filing of the application for review. Court of Appeals Rule 21 (a) provides: "All appeals brought to this Court shall be consecutively numbered and entered upon the docket in the order of their filing in the Clerk's office. *No appeal shall be docketed until the notice of appeal or notice of cross-appeal and a record, and transcript, if any . . . are filed* in the Clerk's office . . ." (Emphasis supplied.) For those cases which require an application to appeal, the notice of appeal is not filed until *after* the application has been granted. OCGA §§ 5-6-34 (b); 5-6-35 (g); Court of Appeals Rule 30 (c). Since the father's application was not granted, no notice of appeal could have been filed, and therefore the appeal could not have been docketed. Accordingly, the posting of bond was not required.

Furthermore, even if the certificate were construed as the trial court subsequently concluded, requiring that the bond be posted

before the filing of the application for review, the fact that such meaning was not easily discernible and was subject to another reasonable interpretation should have prevented a dismissal of the entire action. This was too severe a sanction, particularly when a child's best interest is at stake. For these reasons the trial court erred in dismissing the petition.

2. We do not agree, however, that the trial court erred in ruling that the court order of December 9, 1983, was res judicata on the issue of child custody so that its existence precluded the offering of any evidence prior to that date in the current case. While appellant attempted to raise the question by interlocutory appeal, we declined to review it at that stage. Now, however, since this issue figured in the dismissal of the petition, it is before us for resolution.

The judgment of December 9, 1983 is entitled a "Consent Order." It recites that at the hearing on the father's petition for a change of custody the trial judge orally granted the mother's motion to dismiss because, under the final divorce decree entered in Fayette County in 1976, the minor child was in the legal custody of the mother who currently resides in Rabun County, so that Fayette County was not the proper venue for this action; but that *"[p]rior to the entry of an order on the Court's ruling,* the Court invited all interested parties including the maternal grandmother . . . to discuss the question of custody in an attempt to reach agreement"; that the parties had conferred and "having consented hereto, [i]t is considered, ordered, and adjudged that the provisions of said [final divorce decree] of this Court relating to custody, visitation and support are the provisions presently in effect and all parties are ordered to comply with them." (Emphasis supplied.) The order further set out the terms agreed upon by the parties and the consent order was signed by the judge, both counsel for the mother and the father, and the grandmother personally.

As we view this judgment, it is a valid, enforceable order continuing custody of the child in the mother and requiring the mother, father and grandmother to work toward the best interests of the child, rather than an order of dismissal. While the father seeks in this appeal to resurrect the issue of venue initially raised by the mother, any inaccuracy in this regard was cured when she submitted to the court's jurisdiction of her person and entered into the negotiations culminating in the consent order. In *Hopkins v. Hopkins,* 237 Ga. 845, 847 (229 SE2d 751) (1976), the Supreme Court held that the waiver provisions of the CPA (OCGA § 9-11-12 (h)) in regard to venue and jurisdiction of the person were applicable to custody cases as well as divorce cases; that the superior court in that case had jurisdiction of the subject matter; and that the appellant was in no position to question the order "as to jurisdiction over his person or venue since he con-

sented to and participated in its preparation." The Supreme Court has also stated that in such cases, "where the record shows that the parties affirmatively conceded and confirmed the jurisdiction of the court with respect to the person and the subject matter," and the court rendered an order, neither person can thereafter attack it. *Smith v. Smith*, 248 Ga. 268 (2) (282 SE2d 324) (1981).

We consider the trial court's "ruling" to be a conclusion of law that the mother's position on the issue of venue was correct, rather than a dismissal, since there was no written order of dismissal per se. "An oral announcement in open court of a judgment which the court plans or expects to enter is not a judgment itself and has no effect as a judgment until and unless it is reduced to writing, signed by the judge and filed with the clerk. [Cits.]" *Rothstein v. Brooks*, 133 Ga. App. 52 (2) (209 SE2d 674) (1974). After recognizing that venue was improper the court *could* have dismissed the case in Fayette County and transferred it to Rabun County, but it did not. Instead, it invited the parties to waive venue and reach an agreement on custody of the child, which they did, and upon which the court entered judgment. "The consent of the parties to a judgment has the effect of removing any issuable defenses previously filed." OCGA § 9-12-23. If either the father or mother had refused to accept the Fayette court's jurisdiction prior to these negotiations, the court would have been in error in preparing the judgment appealed from. However, because they both consented to and participated in preparation of the agreement, the father, who brought the suit in the improper forum and never raised any objection in the court below, cannot now successfully appeal and obtain a reversal of the custody disposition to which he agreed. Cf. *Curtis v. Curtis*, 255 Ga. 288 (336 SE2d 770) (1985); *J & F Car Care Svc. v. Russell Corp.*, 166 Ga. App. 888 (305 SE2d 504) (1983). Therefore, the trial court properly ruled that custody of the child was retained by the mother under the terms of the divorce decree as modified by the stipulations agreed upon by the parents and the grandmother.

*Judgment affirmed in part; reversed in part. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I fully agree with Division 1 of the opinion but part company on Division 2.

An analysis of the somewhat unusual Fayette order reveals to me that the issue of change of custody was not decided by that court. Appellee, the mother, had moved to dismiss the petition for change of custody when the case was called for hearing, due to her as the custodial parent being a resident of Rabun County. As was her right, she

wanted the issue of change of custody litigated in the court where she lived. The Fayette court recognized the validity of her motion and granted it, leaving to petitioner the obligation to file anew in Rabun County if he wished to pursue his petition. Then, apparently as an accommodation and acknowledgment of the need for rather immediate intervention, the court "invited all interested parties including the maternal grandmother," who was not a party to the suit, to try to reach some immediate agreement. And so, with the court's assistance, one was reached with respect to professional counseling for the child and family members. Everyone, including the grandmother, consented to the current validity of the original divorce decree as controlling the subject of custody, visitation and support, and the court, to emphasize it and document the parties' (and grandmother's) understanding of that fact, "ordered" compliance. Of course, it would have remained in effect even without this "order," but the air was cleared and the 1976 decree was brought into the instant time and sharper focus.

Then the court memorialized the agreement of the parties and family to submit the child to counseling by a licensed psychiatrist or psychologist, which counseling the family members were invited to also participate in, and concerning which they could all have copies of any written reports made. This, too, became a part of the order, and so to this degree, the mother subjected herself to jurisdiction of the Fayette court. But professional counseling was merely a service which at least the mother and the father and the grandmother all agreed the child needed at that time and without further delay; it did not resolve the issue of custody.

That issue, being the focal point of the petition for change, was clearly reserved at the insistence of the mother to the court of her own county.[1] She is thus hard pressed now to say that it was decided then, when the court did not have jurisdiction of it at her own bidding.

The statute with respect to res judicata provides that: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40. The issue of custody was not before the court nor could it have been, because the mother did not

---

[1] The majority focuses on the "prior to the entry of an order on the court's ruling" language of the "consent order." This does not require the construction that the matter was not dismissed for improper venue. The order concludes by stating, "This order is prepared in accord with the *oral pronouncement* of this court . . . ," and the order itself states at the outset that the "motion to dismiss was granted by the court orally, *the court stating that the reason for granting the motion was that . . . Fayette County is not the proper venue.*" (Emphasis supplied.)

waive proper venue as to that, the primary issue in the case. The court had jurisdiction only to the extent reflected in the order incorporating the agreement on a side matter.

A dismissal for improper venue is not an adjudication on the merits of the case. *Rainwater v. Vazquez*, 133 Ga. App. 173, 174 (210 SE2d 380) (1974); OCGA § 9-11-41 (b). As reflected by the Fayette order, that court did not hear evidence and determine who should have custody of the child. Thus the cap on plowing old ground and relitigating issues already decided, a principle applied in such cases as *Willingham v. Willingham*, 192 Ga. 405, 406 (1) (15 SE2d 514) (1941) and *Lowery v. Adams*, 225 Ga. 843, 844-845 (1) (171 SE2d 624) (1969), would not control here.

The key issue of custody of the child around whom all of this swirls, his best interest, has been pending now for over two years and has yet to be heard and decided by the appropriate court. It would seem that it is time for this to be done.

DECIDED MARCH 19, 1986.

*John M. Brown*, for appellant.
*Tom Pye*, for appellee.